IN THE UNITED STATES DISTRICT COURT OF TENNESSEE,
EASTERN DISTRICT

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: |
| | ) | Jury Demanded, |
| vs. | ) | |
| | ) | |
| ROSS UNIVERSITY | ) | |
| SCHOOL OF MEDICINE; | ) | |
| ADTLEM CORPORATION, | ) | |
| | ) | |
| Defendants | ) | |

## COMPLAINT

John Doe, by and through counsel, for his cause of action against Defendant Ross University School of Medicine (hereinafter "Ross"), avers as follows:

### JURISDICTION & VENUE

1. The jurisdiction of this court is invoked pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, and 28 U.S.C. § 1331. This Court has subject matter jurisdiction over Plaintiff's state law claims under 28 U.S.C §§ 1367 and 1651. The amount in controversy exceeds $75,000, exclusive of interest and costs. In addition, an actual controversy exists between Plaintiff and Ross, justiciable in character, in respect to which John Doe seeks a declaration of his rights and appropriate further relief under the provisions of 28 U.S.C. §§§ 2201, 2202 and 1651.

2. This Court has personal jurisdiction over defendant Ross because it regularly does business and engages in other persistent courses of conduct in this district.

1

3.  Venue is proper in this district pursuant to 28 U.S.C. § 1391, as Defendant Ross is located in this district and a substantial part of the events giving rise to this claim occurred in this district.

### PARTIES

4.  John Doe is a citizen of the United States of America and is a student attending Ross on their Basic Science Campus, temporarily located in Knoxville, TN.

5.  Ross University Medical School is a private international medical school that is a member of Adtalem Global Education. Ross is currently located in in Knoxville, TN. Adtalem Global Education is a global education provider headquartered in Chicago Illinois, United States. Adtalem is the parent company to Ross and several other educational institutions.

### FACTS

6.  Ross University has a contract or agreement with American hospitals in various states wherein students are permitted to do their clinical rotations stateside.

7.  Doe enrolled in Ross in 2012.

8.  There are two tracks students can take at Ross; Students can take four semesters or five semesters of classwork, consisting of basic sciences similar to classes taken in traditional American medical schools. All students take the same number of classes but have the option to take them over a longer period of time.

9.  Doe opted to take the five semester program and was scheduled to complete all basic science classwork last month in August 2018.

10. Hurricane Maria greatly affected the school. Due to the devastation of the hurricane, the students had to evacuate the island and were given the option of completing the semester

2

on a boat or taking a gap semester.

11. There was some question initially as to accreditation while the school was located on the boat, which added to the stress of the relocation.

12. Doe attempted to complete the semester on the boat but the conditions were unendurable; there was no good internet service, food was limited, the conditions were unsanitary and individuals were ill. Because there were no traditional classrooms, students often took exams in their rooms and because of that there was an excess of cheating. Additionally, when students would disembark they were often robbed by local islanders. Because of these conditions Doe finally opted to withdraw and take a gap semester. This put him behind one semester.

13. While on island Dominica, a female medical student ZH began stalking and harassing Doe.

14. After completing one semester on the boat, the school was then moved to to Knoxville, Tennessee.

15. When the campus moved off the boat and to Knoxville, Doe began attending classes again.

16. ZH discovered where Doe lived in Knoxville and began coming to his apartment multiple times per week uninvited. Doe did not invite her to his apartment nor did he let her in when she came to his apartment.

17. Doe often videoed ZH because he did not trust her and wanted proof that de did not hurt her or do anything to encourage her to remain at his apartment.

18. Doe informed ZH he was engaged in an arranged marriage and would be getting married soon. This only caused ZH to worsen her behavior and her visits to his apartment became more frequent.

3

19. One night ZH was outside of Doe's apartment in Knoxville in the middle of the night. ZH banged on the apartment door and screamed until eventually someone called the campus security. Security escorted ZH away from Doe's apartment.

20. ZH received no discipline for the afore mentioned event.

21. Doe made it very clear that he was not interested in a relationship with ZH, but ZH continued to demand entry into Doe's apartment as well as explicit sexual activities.

22. While in Knoxville, ZH's stalking and harassment became so severe that Doe attempted to run away from his apartment during one encounter. ZH proceeded to follow Doe to the parking lot of his complex. Doe got in his car and sped away but ZH followed him. ZH was tailgating unsafely and Doe became scared and drove towards the Ross campus security building and called a security officer to report the situation. The security officer instructed Doe to drive come there and stay in my car. Doe stayed in his car but ZH got out of her car and approached Doe. She was stopped by campus security.[1]

23. When ZH was stopped by security, as stated above, she stated that Doe scratched her. Doe did not scratch ZH. However, she may have been scratched when she physically blocked Doe from running away from her.

24. The responding police officer indicated to Doe that he doubted ZH's story after interviewing them both.

25. The following day Mr. Matthew Fulton of the Office of Student Affairs called Doe in and had him sign a mutual no-contact order. Doe signed the no contact order but indicated his belief that ZH would continue her harassment and stalking. Doe was told not to worry and they would take care of it.

---

[1] See Attachment A

4

26. The very next day. ZH showed up again at Doe's apartment demanding entry and sex. Doe informed ZH he would report her for coming over after they both signed the no contact orders. ZH then explicitly offered Doe sex in order to resolve things, Doe declined.

27. Doe reported the prior night's event to the Office of Student Affairs the next morning and reported her violation. Mr. Matthew Fulton wrote it down and said he would "look into it."

28. ZH continued this routine for several days, with Doe reporting her to the school each time; nothing was done to either stop ZH's behavior or discipline her. Doe reported her almost every time and nothing was being done about it; Ross administration repeatedly ignored his complaints and requests for help.

29. About a week later, on April 1st, 2018, ZH was knocking very loudly on Doe's door demanding to be let in. Doe called the Knoxville police and the responding officer told ZH to leave and advised Doe to get a restraining order against her. Doe reported the police encounter to Student Affairs, again ZH was not disciplined.

30. Doe reported to Student Affairs that ZH requested sex almost every time she contacted him.

31. For an unknown reason, Ross did not charge ZH with sexual harassment, despite the reports made by Doe.

32. Doe provided Mr. Fulton several videos of ZH at his apartment trying to force her way into the apartment.

33. Doe believed ZH to be mentally and emotionally unstable.

34. The school was provided all of the information about her harassment and stalking, along with the videos of evidence before there was a Title IX complaint even filed.

5

35. ZH continued to contact Doe, but in a less threatening manner.

36. One day after taking a final and having a few drinks, Doe, in a drunken state, texted ZH and invited her over.

37. ZH questioned whether it was a trick and that Doe was really just going to call and report her for violating the no contact order, as he had done every other time she came to his apartment. Doe responded that he would not report her if she came over. In essence Doe was saying he would agree to waive the no contact order for the night if ZH wanted to come over.

38. Doe's intention was not to blackmail ZH for sex. ZH was willing to provide him sex on most occasions, Doe was merely saying that he would not report her this time if she came to his apartment.

39. Doe admits he was drunk when he made this call and requested ZH to come over.

40. ZH came over and the two engaged in sexual relations.

41. ZH had literally begged Doe for sex on multiple occasions, many of which are caught on video and in the possession of Ross.

42. ZH was then angry that Doe did not renew their relationship and did not contact her after the sexual act. ZH used that one opportunity to retaliate against Doe by claiming that Doe threatened her with reporting the multiple no contact violations if she did not have sex with him.

43. Since Doe had been reporting the multiple violations to the school each time ZH violated the no contact order, ZH's claim did not make sense if the school had thought about it.

44. However, the school was biased against Doe and had done nothing to stop ZH's actions for the entire time Doe reported ZH. However, when ZH makes one report, the school

6

disciplines Doe severly.

45. Despite all the reports Doe made against ZH, there was never a disciplinary hearing or a Title IX investigation or hearing.

46. A few days after ZH reported that Doe blackmailed her, she went to Doe's apartment again and told him that she reported his messages to Student Affairs.

47. ZH told Doe that she deeply regretted reporting him and had done it out of anger for making her leave the night before and because he would not continue their relationship.

48. ZH *again* offered Doe sex as a way to compensate for reporting him, which he refused. Doe went to Mr. Fulton again and explained to him what had happened and the events leading up to it, including ZH's sexual harassment of him. Mr. Fulton assured Doe that he understood everything and apparently wrote a report about it.

49. Even still, ZH continued to show up at Doe's apartment and continued her stalking behavior about 2-3 times a week (after the report to student affairs of the alleged blackmailing). Doe became despondent and stopped reporting it to the school because it was clear they weren't going to do anything about it.

50. ZH then sent one of her friends to Doe's place to contact him and attempt to mediate the situation.

51. Doe was informed by his next door neighbor that ZH would knock on Doe's door multiple times throughout the day when he was not home.

52. ZH's behavior continued into the summer semester. The school finally sent out the charges months after the car chasing incident, wherein the campus security were involved..

53. At that point ZH withdrew from the school, but continued to show up at Doe's apartment several times asking to "talk about things". Doe kept refusing to let her in and

7

closed the door many times on her.

54. In June Doe went home for a week to visit his family and his neighbor told him ZH came and knocked on Doe's door almost every day and tried leaving a note under his door.

55. After the hearing ZH continued to harass Doe by threatening to call his mom and tell her that they had sex and that they were involved in a relationship. Doe became very concerned because he knew HZ would not leave him alone and the school would not stop her behavior.

56. ZH's mother would be deeply offended if Doe was involved in a relationship with another girl because he was arranged to be married.

57. ZH continually sent Doe emails, hoping that he would respond to her.

58. This situation has resulted in severe distress for Doe over the past two semesters and nearly caused him to fail exams.

59. Doe has tried explaining ZH's harassment and stalking to the school multiple times and that it occurred many times after he notified Student Affairs – yet they did nothing.

60. Doe has been treated very unfairly by the refusal of the school to act upon repeated notices of violations of the no contact order, and receiving a proportionally more severe punishment than ZH received or than he deserved.

61. ZH filed a Title IX claim against Doe for which an investigation and hearing was held.

62. Nothing about the hearing was fair for Doe and he did not understand most of what occurred. Additionally, ZH was given an advisor and assistance by the school, Doe was not.

63. ZH was given the luxury of a video call-in and speaking without having to face the hearing committee. Doe was subjected to judgment by the hearing committee, where

8

mostly women were present, intensely scrutinizing him while disregarding his testimony. The committee asked Doe repeatedly about his version of events as if he was lying. When Doe told them about ZH's mental health problems they acted as if he had been taking advantage of her and that it had nothing to do with her harassment.

64. Mr. Matthew Fulton, whom Doe had made all of his reports to, did not speak at all at the hearing and sat quiet, even though he was essentially Doe's point of contact regarding this case, and had a firsthand account of everything. Fulton only spoke when Doe checked his phone by saying "You better not be recording this hearing".

65. After the hearing Mr. Fulton led Doe out and told him that decisions regarding this would be along the lines of a simple probation and that Doe would be able to appeal and that he should not worry about it for now because the decision would come in a few days. Doe's suspension notice came later that same day. Mr. Fulton conveniently took a week vacation the following day without returning Doe's emails.

66. After the hearing Doe appealed and his appeal was denied.

67. Doe was not given the opportunity to cross examine ZH, or even ask her questions through the panel.

68. The following week Doe spoke to Mr. Fulton told him that he went over his appeal with Dr. Bryan Hayes and recommended to keep Doe's suspension. When Doe asked him about the severity of this on his studies he essentially told him "tough luck" and to "deal with it". Doe explained to him and Dr. Hayes all the stress a suspension would put on him academically and financially and they explained his only option was to withdraw from the current semester, since Doe was in danger of failing, and get an additional short term loan to pay for my apartment lease while he was not in school.

9

69. At this point Doe was STILL being harassed by ZH and felt betrayed by the school. Doe somehow managed to pass his semester despite the immense stress he endured.

70. Doe suffered extreme depression and was provided no support options at the initiation of the Title IX investigation. Therefore, he had no one to turn to.

71. Doe is now married and would like for ZH to leave him alone, yet she has continued to contact his mother.

72. The latest contact was in September 2018 and was reported to Ross, and to Doe's knowledge, they have not even contacted ZH regarding her activity.

73. ZH continually harassed Doe for over a year. The only mistake Doe made was to contact ZH when he was drunk and ask if she wanted to have sex, something she routinely begged him for. ZH used the opportunity to punish Doe when he did not continue a relationship with her by saying he blackmailed her- forced her- to have sex with him so he would not report the violations of the no contact order. Doe had already reported the violations of the no contact order- that was not what Doe said to ZH. Doe only meant that he would not report her on that night if she wanted to come over and have sex.

74. ZH knew Doe was drunk when he called her and therefore Doe was unable to consent but his was not addressed during the hearing.

**COUNT I – BREACH OF CONTRACT**

75. All preceding paragraphs are incorporated herein as if repeated in their entirety.

76. Doe applied to and enrolled in Ross and paid tuition and other fees and expenses. He did so in reliance on the understanding and with the reasonable expectation that the College would provide education and instruction to Doe as well as abstain from arbitrarily imposing punishment that would prevent Doe from securing his degree, or that

10

interfered with his education, in an unfounded manner or arbitrary basis.

77. Doe also had the reasonable expectation that Defendant Ross would implement and enforce the promises and policies made in its official publications about Gender Based Sexual Misconduct, including the Student Handbook and all other official publications of the College.

78. A contract was formed between the College and Doe; either an express contract or a contract implied in law or fact.

79. The contract contained an implied covenant of good faith and fair dealing and other specific written provisions from the Student Handbook and other unwritten rights guaranteed by law. Certain rights were and are guaranteed to every student at Ross involved in the disciplinary process, including those accused of sexual misconduct or assault.

80. Specifically, Defendant Ross is accused of the following breaches:

**A. Breach of the obligation to conduct an appropriate and unbiased investigation;**

1. Doe was never seen as or treated as a victim despite being the first to report the stalking he was experiencing by ZH.

2. There does not appear to be any language stating the decisions and actions by the Title IX Coordinator and hearing panel will be unbiased.

3. Despite the lack of any language regarding impartiality in Ross' sexual misconduct policy, the promise of fundamental fairness and the implied covenant of good faith require Ross University to conduct appropriate and unbiased investigations into ***all*** sexual misconduct allegations.

4. Ross University failed to conduct an appropriate and unbiased investigation regarding

11

the allegations against Doe.

5. Doe was entitled to a support advisor of his choosing, and had the right to select an attorney or legal counsel as his support advisor, this was not clearly made known to Doe. Doe expressed that he was ill at the beginning of the hearing and had not had time to prepare and the hearing panel disregarded his statements.

6. At that time, Doe had neither been provided an advisor nor retained an attorney.

**B. Denial of meaningful right to counsel;**

1. Ross violated both its own sexual misconduct policy, the promise of fundamental fairness, and the implied covenant of good faith and fair dealing by denying Doe a meaningful right to effective counsel at critical times throughout the investigation and disciplinary process.

2. Doe was not afforded the right to have an attorney-advisor, with formal legal training and as is now requisite in the 6th circuit, which includes all schools in Tennessee. If Doe was allowed to have an attorney advisor, he was not told this by the Ross, and in fact, was encouraged not to have an advisor.

3. The notion of a student being able to defend himself competently in the immensely emotional situation Doe found himself is absurd. Doe was intimidated, as any innocent student accused of sexual assault would have been, and could not have been expected to prepare and deliver his version of the facts in a coherent and logical manner. Doe should not have been forced to go through the investigation process without counsel or a representative.

**C. Breach of obligation to provide competent, trained, unbiased investigators, and decision makers;**

1. Although Ross University's sexual misconduct policy is inexplicably devoid of an obligation that decision makers act without bias, the implied covenant of good faith

12

and fair dealing and Ross University's promise of fundamental fairness obligated Ross University to provide Doe with unbiased, competent and trained investigators and decision makers and to ensure that the outcome of the investigation was not predetermined.

2. Doe went to Mr. Mathew Fulton numerous times with his concerns and was ignored or placated. The one instance where there was sexual activity invited by Doe, Doe was incapacitated. Had Doe been a female, his state of inebriation would have factored in and he would not have been at fault for those actions, however, he was found guilty of all activity despite his numerous complaints about ZH

3. Doe was sanctioned very harshly for actions he did not commit; Does is the victim here, hot ZH.

4. The Ross handbook states that the actions of ZH should have triggered an automatic referral to the school regarding sexual misconduct. This did not happen.

5. Upon information and belief, none of the investigators or decision makers involved in Doe's case had adequate training in adjudication, in the law of sexual assault, the weighing of evidence, the significance of forensic evidence, or in the relevance or irrelevance of particular types of evidence in the alleged sexual assault setting. Thus, Ross University breached its guarantees of due process and fundamental fairness, and the implied covenant of good faith and fair dealing.

**D. Breach of obligation to afford Doe an opportunity for confrontation and cross examination;**

1. Ross University's sexual misconduct policy does not provide for any sort of cross examination of the accuser. This is now required under the very new case out of the

6th Circuit *Doe v. Baum*[2]. The case explicitly states that when there is a credibility determination to be made the valuable tool of cross examination is important and necessary. It states that if the accuser is uncomfortable answering questions from the accused, the an attorney for the accused may direct the cross examination. Simply because of this fact alone, there was a mishandling of this situation and the case must be reexamined- either at the school level or in the courts.

2. Doe's right to confront Ross University's evidence against him is a key component of fundamental fairness. According to *Doe v. Baum*, a newly decided 6th circuit case from September 7, 2018, the right to cross examination is imperative and now a legal requirement. Doe was not afforded that opportunity.

**E. Breach of obligation that there be sufficient evidence (or any evidence) to support the Title IX Coordinator's finding.**

1. Pursuant to Ross University's sexual misconduct policy, the school could only find Doe responsible for the alleged violation based on the information in the investigatory file and utilizing the preponderance of the evidence standard.

2. Ross University's promise of fundamental fairness and the implied covenant of good faith and fair dealing require that Doe have been presumed innocent and Ross University have the burden of proof. The records pertaining to Ross University's investigation and ultimate decision demonstrate that Ross University breached these obligations.

**F. Breach of the obligation to provide a meaningful right of appeal.**

1. Pursuant to Ross University's sexual misconduct policy, Doe had the right to submit

---

[2] *Doe. v. Baum* attached

an appeal of the determination of responsibility and any sanctions because of the presence of procedural errors, new information, an argument that the evidence does not support the determination, or an argument that the severity of the sanction imposed was inappropriate.

2. The manner in which the appeal was handled demonstrates that the appeal was a mere formality with no rea right that the matter was reevaluated. Thus, Doe had no meaningful right to appeal.

3. Upon information and belief, the Appellate Officers who considered Doe's appeal did not have training in adjudication; in the law; in the weighing of evidence; or in the relevance of irrelevance of types of evidence in the alleged sexual misconduct investigation setting.

4. Despite the absence of any relevant training, the appellate officers were somehow able to conclude that no procedural errors, evidence of bias, relevant new information, or excessive severity had impacted or would impact the ultimate outcome and sanctions in Doe's case.

5. This "appeal" was illusory and a sham, and breached the promise of fundamental fairness and the implied covenant of good faith and fair dealing.

### COUNT I PROMISSORY ESTOPPEL

1. All of the foregoing paragraphs are incorporated by reference.

As described above, the Sexual Assault Policies and Procedures, Student Handbook, and other official University publications constitute representations and promises that the University intended to induce reliance, action, or forbearance on the part of John Doe. In reasonable reliance on these promises and representations, Doe accepted the University's

15

offer of admission and incurred tuition and other expenses based on the University's promise that it would abide by its implied and express promises, including guarantees of due process and fundamental fairness, and the implied covenant of good faith and fair dealing.

2. To his detriment, Doe reasonably relied on the express and implied promises and representations made by the University.

3. As a direct and foreseeable result of the University's failure to honor its promises and representations, Doe has sustained and will continue to sustain substantial injury, damages, and losses. Doe's damages, injuries and losses include, but are not limited to: injury to reputation, severe emotional distress, past economic loss, future economic loss, loss of future career opportunities, loss of educational and extracurricular opportunities, and deprivation of due process.

4. Doe maintains that the sexual encounter at issue was entirely consensual, except that he was inebriated and is the victim in that there is no consent from Doe, and there was no blackmail.. Doe was the victim in this matter and the school has ample opportunity to know this. The school has all of the reports and videos provided by Doe.

5. The accuser was assisted by the school in making her complaint and the investigation was stilted towards her.

## COUNT II – TITLE IX VIOLATIONS

20 U.S.C. § 1681(a). "Title IX is enforceable through a judicially implied private right of action, through which monetary damages are available." *Klemencic v. Ohio State Univ.*, 263 F.3d 504, 510 (6th Cir. 2001). Standard of Review: A Title IX claim must allege

2016).

### A. Erroneous Outcome

16

1. Doe has facts sufficient to cast articulable doubt on the accuracy of the outcome of the disciplinary proceeding as no exculpatory evidence or evidence favorable to him was considered.

2. Public Records response (patterns of decision-making that tend to show the influence of gender) show a particularized causal connection between the flawed outcome and gender bias.

3. The standard of a preponderance of the evidence used by Ross, from obsolete direction given in the "Dear Colleague" letter of 2011, was never met. Both people who are capable of testifying about their interactions and relationship. There is nothing in the record to suggest a reason why ZH was deemed more credible than Doe. At the outset, Doe is a more credible witness than ZH unless proven otherwise. He also reported her, with evidence, weeks before she ever reported him and the school did nothing to stop her behavior. This in itself, is a violation and shows bias, once Ross was aware of the stalking actions of ZH, they were required to act on it under Title IX, since the parties had a prior sexual history.

4. Doe believes that Student Affairs found ZH to be more credible simply because she is a female and he is a male, and that in actuality, ZH is less credible due to the inconsistency of her statements throughout the investigation and her continued stalking and sexual harassment. Even now, this month (September 2018) ZH has violated the no contact order, by contacting Doe's mother.

5. Doe had no assistance through the school or an advisor appointed by the school. He was not informed he could get an attorney and his medical school schedule did not allow for a lot of research on how to handle the matter. He reported it to the School,

17

that is all he new to do. ZH has assistance preparing witnesses, finding those witnesses, and preparing her statement. This is biased and unfair.

6. Doe was only allowed to view witness evidence the day of the hearing. ZH was never disciplined for any of the other times for stalking and sexual harassment that was happening daily

7. He reported in 4-5 times in graphic detail what her actions were and when they had a sexual encounter she never cancelled her consent and she was the sober one, not Doe.

**B. Selective Enforcement**

1. Upon information and belief a Public Records response would show a vast difference in the number of males found guilty of sexual assault vs. the number of females. There would also be a question of the number of females found to be lying in their accusations.

**C. Deliberate Indifference.**

1. By permitting violations of Ross policy, known to Student Affairs and school investigators, objectively barred Doe's access to his educational opportunities and benefits." *Davis v. Monroe Cty. Bd. of Educ*., 526 U.S. 629, 633 (1999); see also *Patterson v. Hudson Area Schs*., 551 F.3d 438, 444–45 (6th Cir. 2009). Doe reported ZH dozens of times and nothing was done to assist him. ZH reports Doe one time and the school immediately takes her side and believed her over Doe.

2. Ross, recipients of federal funds and therefore state actors, had actual knowledge of the policy violations to constitute "notice" that the proceedings were not fair, unbiased or transparent. (Public Records response establishing an extensive pattern of sexually offensive behavior.

3. Doe has alleged facts showing a potential pattern of gender-based decision-making that raise a reasonable expectation that discovery will reveal circumstantial evidence of gender discrimination. Specifically, Doe reported ZH multiple times with no action taken to deter ZH's behavior and no Title IX charge.

**D. Archaic Assumptions**

1. Doe has created a plausible inference of intentional gender discrimination, sufficient to seek further evidence through the discovery process. *Southfield Ltd. P'ship v. Flagstar Bank*, F.S.B., 727 F.3d 502, 505 (6th Cir. 2013) **.**

2. Ross viewed ZH as truthful when no objective evidence made her testimony or her witnesses more credible than Doe's. Given the current climate of #MeToo, women are automatically assumed to be telling the truth when accusing a male of sexual misconduct. This is why the right to cross examine ZH was so important and the fact that Doe was deprived of this right so egregious.

3. It was simply an offer to come over and have sex, there were no strings attached. ZH was just concerned about being reported again and Doe made it clear that he wasn't going to report her for breaking the no contact order that night. There was no black mail.

**E. Hostile Environment**

1. Doe has shown that his educational experience was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive [so as] to alter the conditions of the victim's" educational environment. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)

**F. Equal Protection**

1. Doe alleges that on more than one occasion, state actors intentionally treated him differently than females similarly situated without any rational basis for the difference.

2. ZH was given access to far more information and material than was Doe, who has a Constitutional right to equal protection under the law when his fundamental rights were at stake.

3. ZH was permitted to enter evidence which was then submitted to the hearing panel when that evidence had clearly been submitted after the deadline for submission of evidence. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).

4. The law does not require that misconduct giving rise to a discriminatory outcome be of the same type and degree. Heyne, 655 F.3d at 571 Misconduct giving rise to expulsion need not be sexual misconduct. The degree of punishment for the seriousness of the offense can be compared.

5. Doe alleges that the different treatment he received was based on "purposeful or intentional" gender discrimination. *Smith v. City of Salem*, 378 F.3d 566, 577 (6th Cir. 2004). Testimony in this case was a classic "he said, she said" and it is clear that no objective view of Student P's version of the events was more credible than Doe's.

**G. Substantive Due Process**

1. Doe's Constitutional guarantee of substantive-due-process rights were violated because he was deprived of two constitutionally protected property interests: a property interest in continuing his education and a property interest in a transcript "unmarred" by the finding of responsibility for sexual harassment or any action related to such.

20

**RELIEF REQUESTED**

1.     WHEREFORE, Plaintiff prays for this judgment against Defendant Ross University Medical School and asks this Court to: Issue a judgment that that (a) declares Ross University's investigation and prosecution of the charges against Doe to contrary to Ross University's contractual and other obligations, its own rules and regulations and arbitrary and capricious and allow Doe to return to Ross immediately;

2.     Declare Ross University's student disciplinary process, including the sexual misconduct policy, as written and implemented and as applied to Doe, to be contrary to Title IX ;

3.     Set aside the decision of Ross University as contrary to Ross University's own rules and regulations, contrary to law, arbitrary and capricious, and unsubstantiated by evidence;

4.     Allow Doe to immediately begin attending classes again so that he does not miss any time and be able to catch up in time to take exams for this semester and if he needs assistance in catching up, to provide such assistance;

5.     Require Ross University to expunge the entire incident at issue from its records;

6.     Award Doe compensatory damages in an amount to be determined at trial for mental anguish, severe emotional distress, injury to reputation, serious mental injury, past and future economic loss, deprivation of due process, loss of educational opportunities, loss of future career prospects, and other injuries proximately caused by Defendant Ross University;

7.     Award Doe his attorneys fees, disbursements and costs pursuant to the provisions of 42 U.S.C. § 1988(b) relating to Title IX, or pursuant to any other statute or

common law doctrine providing for the award of attorneys fees, disbursements, and/or costs;

8.    Award prejudgment interest;

9.    Grant such further relief that this Court may deem just and proper.

Dated this the 25th of September, 2018.

Respectfully Submitted,

*Michelle Owens*

Michelle Owens
Agee Owens & Cooper Law 2911 Elm Hill
Pike Nashville, TN 37214

## CERTIFICATE OF SERVICE

I certify that on September 25, 2018, the foregoing Complaint was served by the courts ECF filing system, U.S. Mail, or email on the following:

Leah Heinecke-Krumhus
Counsel for Ross University and Adtlem
500 W. Monroe
Chicago, IL 60661
leah.heinecke-krumhus@adtalem.com
Counsel for Defendant


*/s/ Michelle Owens*
_____
Michelle Owens