IN THE U.S. DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No.: 3:18-CV-00411-CLC-DCP |
| | ) | |
| ROSS UNIVERSITY SCHOOL | ) | |
| OF MEDICINE, ADTALEM | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS**

_____

Bryan M. Westhoff (*pro hac vice*)
bwesthoff@polsinelli.com
Polsinelli PC
150 N. Riverside Plaza, Suite 3000
Chicago, Illinois 60606

Caitlin J. Morgan (*pro hac vice*)
cmorgan@polsinelli.com
Polsinelli PC
2950 N. Harwood, Suite 2100
Dallas, Texas 75201

Michael A. Malone (BPR # 31219)
mmalone@polsinelli.com
Polsinelli PC
401 Commerce Street, Suite 900
Nashville, TN 37219
Telephone: (615) 259-1510

**Counsel for Defendants**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 3

ARGUMENT .......................................................................................................... 4

    I.      The Court Should Dismiss Plaintiff's Breach of Contract Claim. ......................... 4

          A.      Plaintiff Fails to Identify Any Specific Contractual Provisions. ................5

          B.      Plaintiff Fails To Allege Specific Facts Supporting That Ross University Breached Any Contractual Provisions. ....................................7

          C.      Plaintiff Fails To Allege Any Damages. ...................................................11

    II.     The Court Should Dismiss Plaintiff's Promissory Estoppel Claim. .................... 11

    III.    The Court Should Dismiss Plaintiff's Title IX Claims. ....................................... 12

          A.      Plaintiff Has Not Pled Facts Sufficient To Support The "Erroneous Outcome" Theory. ...............................................................13

          B.      Plaintiff Has Not Pled Facts Sufficient To Support The "Selective Enforcement" Theory..................................................................14

          C.      Plaintiff Has Not Pled Facts Sufficient To Support The "Deliberate Indifference" Theory. ..........................................................15

          D.      Plaintiff's "Archaic Assumptions" Theory Fails As A Matter Of Law Because It Only Applies In The Student-Athlete Context................17

          E.      Plaintiff Has Not Pled Facts Sufficient To Support The "Hostile Environment" Theory. .............................................................17

          F.      Plaintiff's "Equal Protection" And "Due Process" Claims Fail As A Matter Of Law Because Ross University Is Not A State or State Actor. ......................................................................................18

    IV.    Plaintiff Has Not Stated A Valid Claim Against Adtalem. ................................. 18

CONCLUSION..................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                             **Page(s)**

*Anderson v. Vanderbilt Univ.*,
    450 Fed. App'x 500 (6th Cir. 2011) .......................................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 1995 (2009)......................................................................4

*Atria v. Vanderbilt Univ.*,
    142 Fed. App'x 246 (6th Cir. 2005) ......................................................................5, 7

*Barnes & Robinson Co., Inc. v. OneSource Facility Services, Inc.*,
    195 S.W.3d 637 (Tenn. Ct. App. 2006)................................................................11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1995 (2007)....................................................................4

*Center for Bio–Ethical Reform, Inc. v. Napolitano*,
    648 F.3d 365 (6th Cir. 2011) ..................................................................................8

*Custom Built Homes v. G.S. Hinsen Co.*,
    No. 01A01-9511-CV-00513, 1998 WL 960287 (Tenn. Ct. App. Feb. 6, 1998) ....................11

*Doe v. Baum*,
    903 F.3d 575 (6th Cir. 2018) .......................................................................... *passim*

*Doe v. Belmont Univ.*,
    -- F. Supp. 3d --, 3:17-cv-01245, 2018 WL 4627033 (M.D. Tenn. Sept. 27,
    2018) ................................................................................................... *passim*

*Doe v. Cummins*,
    662 Fed. App'x. 437 (6th Cir. 2016) ..................................................................4, 13

*Doe v. Miami Univ.*,
    882 F.3d 579 (6th Cir. 2018) ..............................................................................15, 17

*Doe v. Univ. of Cincinnati*,
    173 F. Supp. 3d 586 (S.D. Oh. 2016) ................................................................7, 8

| Cases | Page(s) |
|---|---|

*Doe v. Univ. of the South*,
687 F. Supp. 2d 744 (E.D. Tenn. 2009) ........................................................ *passim*

*Faparusi v. Case Western Reserve Univ.*,
711 Fed. App'x 269 (6th Cir. 2017) ................................................4, 18

*Gorman v. Univ. of Rhode Island*,
837 F.2d 7 (1st Cir. 1988) ................................................................8

*Harris v. Forklift Sys., Inc.*,
510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) ...........................................17

*Heineke v. Santa Clara Univ.*,
No. 17-CV-05285-LHK, 2017 WL 6026248 (N.D. Cal. Dec. 5, 2017) ..................................18

*Ikpeazu v. Univ. of Neb.*,
775 F.2d 250 (8th Cir. 1985) ...............................................................7

*Jenkins v. Marvel*,
683 F. Supp. 2d 626 (E.D. Tenn. 2010) .........................................................18

*Jones v. BAC Home Loans Serving, LP*,
No. W2016-00717-COA-R3-CV, 2017 WL 2972218 (Tenn. Ct. App. July 12, 2017) ..............................................................................12

*Logsdon v. Hains*,
492 F.3d 334 (6th Cir. 2007) ...............................................................4

*Mallory v. Ohio Univ.*,
76 Fed. App'x 634 (6th Cir. 2003) ....................................................13, 14, 15, 17

*McMillan v. Hunt*,
No. 91-3843, 1992 WL 168827 (6th Cir. Jul. 21, 1992) .............................................7

*Nash v. Auburn Univ.*,
812 F.2d 655 (11th Cir. 1987) ................................................................8

*Rendell-Baker v. Kohn*,
457 U.S. 830, 102 S. Ct. 2764, 73 L. Ed. 2d 418 (1982) ..........................................18

*Shedd v. Gaylord Entm't Co.*,
118 S.W.3d 695 (Tenn. Ct. App. 2003) ..........................................................12

| Cases | Page(s) |
|---|---|

*Sifuna v. S. Coll. Of Tenn., Inc.*,
No. 17-5560, 2018 WL 3005814 (6th Cir. Apr. 5, 2018) ....................................................5, 11

*Thomas v. Meharry Med. Coll.*,
1 F. Supp. 3d 816 (M.D. Tenn. 2014).................................................................................5, 6

**Statutes**

20 U.S.C. § 1681(a) ...................................................................................................................1

**Other Authorities**

Federal Rule of Civil Procedure 8(a)(2) ........................................................................................4

Federal Rule of Civil Procedure 12(b)(6) ......................................................................................4

JOHN DOE,                     )

Plaintiff,               )

vs.                           )     Civil Action No.: 3:18-CV-00411-CLC-DCP

                              )

ROSS UNIVERSITY SCHOOL     )
OF MEDICINE, ADTALEM        )
CORPORATION,               )

Defendants.             )

---

### DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS

---

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Ross University School of Medicine ("Ross University") and Adtalem Corporation ("Adtalem") (collectively "Defendants") file this Brief in Support of their Motion to Dismiss.

### <u>INTRODUCTION</u>

Plaintiff, John Doe, filed this case because he disagrees with the outcome of school disciplinary proceedings in which he was found guilty of sexually assaulting a fellow student. Plaintiff includes claims for (i) breach of contract; (ii) promissory estoppel; and (iii) violations of 20 U.S.C. § 1681(a) ("Title IX") under a variety of theories, but at its heart, Plaintiff's Complaint alleges that the disciplinary hearing committee should have believed him and not his accuser. Even on their face, Plaintiff's allegations fail to state any valid cause of action.

***First***, the Court should dismiss Plaintiff's breach of contract claims because Plaintiff fails to identify any valid contractual terms that Ross University allegedly breached. Indeed, Plaintiff ***admits*** that many of the purported contractual provisions do not actually exist. For the other alleged contractual provisions, Plaintiff relies entirely on conclusory allegations that the

provisions both exist and were breached. Plaintiff also fails to allege any specific damages. Instead, Plaintiff relies entirely on boilerplate language for amorphous damages, which are insufficient to state a breach of contract claim.

*Second*, the Court should dismiss Plaintiff's promissory estoppel claim because it is entirely duplicative of his breach of contract claims. It is well-settled that where a promissory estoppel claim is based upon the same alleged conduct that underlies the breach of contract claim, it must be dismissed. Plaintiff fails to allege any independent promise, outside of the alleged contract, upon which he relied to his detriment.

*Third*, Plaintiff's own allegations demonstrate that many of his Title IX theories are not valid causes of action. For example, Plaintiff brings a Title IX claim based on the theory of "archaic assumptions," but this theory does not apply outside of the student-athlete context. Likewise, Plaintiff's "due process" and "equal protection" claims fail as a matter of law because they only apply to state actors. Plaintiff admits that Ross University is a private university, and its alleged receipt of federal funds is not sufficient to make it a state actor. For the remaining Title IX claims, Plaintiff relies entirely on conclusory allegations and fails to plead any specific facts supporting the claims.

*Finally*, in addition to all of the points stated above, Plaintiff fails to allege a single fact from which to infer liability by Adtalem. Indeed, Plaintiff mentions Adtalem only twice in the entire Complaint – and solely in the paragraphs describing the parties. Adtalem is a separate legal entity and Plaintiff fails to allege any facts that would support piercing the corporate veil. This is a separate and independent reason that the Court should dismiss Adtalem from this case.

## BACKGROUND[1]

Plaintiff alleges that he enrolled in Ross University, a private medical school, in 2012. (Compl. at ¶¶ 5-7.) According to Plaintiff, while enrolled, another student, ZH, began harassing him. (*E.g. id.* at ¶¶ 10-13, 16-18, 19, 22, 23, 26-29, 49-59.) Plaintiff alleges that ZH came to his apartment multiple times, including one incident in which he fled to Ross University's campus because he was concerned for his safety. (*Id.* at ¶¶ 19, 22.) Plaintiff's apartment is the only location identified in the Complaint where ZH allegedly harassed Plaintiff. (*Id.* at ¶¶ 16-19, 22, 26, 28-29, 32, 46, 49, 51-54.) Plaintiff does not identify any other locations where ZH allegedly harassed Plaintiff. In response to Plaintiff's complaints about ZH's harassment, Ross University required Plaintiff and ZH sign a mutual "no-contact" order, prohibiting them from contacting each other. (*Id.* at ¶ 25.)

Notwithstanding the "no-contact" order put in place by Ross University, Plaintiff admits that he texted ZH to have sex with him. (*Id.* at ¶¶ 36-41.) Plaintiff told ZH that he would not report her for violating the "no-contact" order if she had sex with him. (*Id.* at ¶¶ 37-38.) Plaintiff and ZH had sex after he sent her the text message. (*Id.* at ¶¶ 40, 61.)

After the two had sex, ZH reported Plaintiff to Ross University. (*Id.* at ¶ 42.) ZH told Ross University that Plaintiff threatened to report her for violating the no-contact order if she did not have sex with him. (*Id.* at ¶ 42.) ZH filed a Title IX claim against Plaintiff, and Ross University conducted an investigation and held a hearing before a disciplinary committee. (*Id.* at ¶ 61.) Plaintiff admits that he participated in the hearing before the disciplinary committee. (*Id.* at ¶¶ 62-66.) The disciplinary committee found Plaintiff guilty of sexual misconduct based on his text message in violation of the "no-contact" order. (*Id.* at ¶ 65.) Plaintiff further alleges that

---

[1] Defendants dispute many of the allegations in Plaintiff's Complaint. Nevertheless, Defendants will treat these allegations as true solely for the purpose of this Motion to Dismiss.

he appealed the finding of the disciplinary committee, but that his appeal was denied. (*Id.* at ¶ 66.) Although Plaintiff was found guilty, Ross University still allowed him to finish the current semester before serving his suspension. (*Id.* at ¶ 69.) Plaintiff passed his semester. (*Id.*)

## ARGUMENT

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must provide 'a short and plain statement of the claim showing that the [plaintiff] is entitled to relief.'" *Doe v. Baum*, 903 F.3d 575, 580 (6th Cir. 2018) (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he plaintiff's '[f]actual allegations must be enough to raise a right to relief above the speculative level' and must state claim that is 'plausible on its face.'" *Faparusi v. Case Western Reserve Univ.*, 711 Fed. App'x 269, 272 (6th Cir. 2017) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1995, 167 (2007)). While a court "must construe the complaint in a light most favorable to the plaintiff, accepting all factual allegations as true, and drawing all reasonable inferences in the plaintiff's favor" it is not required to "accept the plaintiff's legal conclusions as true, and thus '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Doe v. Cummins*, 662 Fed. App'x. 437, 443 (6th Cir. 2016) (citing *Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007); quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1995, 1937 (2009)). Here, Plaintiff fails state a valid cause of action because many of Plaintiff's allegations directly contradict essential elements of his claims. For the remaining claims, Plaintiff relies solely on conclusory allegations, without any specific factual allegations supporting the essential elements.

## I. The Court Should Dismiss Plaintiff's Breach of Contract Claim.

To state a claim for breach of contract under Tennessee law, a plaintiff must plead (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of the contract;

and (3) damages caused by the breach.[2] *Doe v. Belmont Univ.*, -- F. Supp. 3d --, 3:17-cv-01245, 2018 WL 4627033, at *4 (M.D. Tenn. Sept. 27, 2018) (citing *Thomas v. Meharry Med. Coll.*, 1 F. Supp. 3d 816, 828 (M.D. Tenn. 2014)). Plaintiff's Complaint fails to provide specific allegations supporting any of these three essential elements of his breach of contract claim.

### A. Plaintiff Fails to Identify Any Specific Contractual Provisions.

The Sixth Circuit, applying Tennessee law, has held a university's written catalogs, manuals, student handbooks, bulletins, circulars, and regulations may create an implied contract with students. *See Belmont*, 2018 WL 4627033, at *4 (quoting *Sifuna v. S. Coll. Of Tenn., Inc.*, No. 17-5560, 2018 WL 3005814, at *2 (6th Cir. Apr. 5, 2018); *Atria v. Vanderbilt Univ.*, 142 Fed. App'x 246, 255 (6th Cir. 2005)). But a plaintiff still must identify the specific written policies that he alleges the defendant breached. *Id.*

Here, Plaintiff fails to identify any specific policies or statements in Ross University's written catalogs, manuals, handbooks, or other materials, which he alleges that Ross University breached. Indeed, Plaintiff does not even attach a copy of any of these documents. *Compare Belmont*, 2018 WL 4627033, at *1-2, fn. 2 (attaching applicable student handbook and referencing specific provisions therein) *with* Compl., *generally*. Rather, Plaintiff alleges only that he had a reasonable expectation that Ross University would enforce unidentified "promises and policies" made in its official publications about Gender Based Sexual Misconduct, and "other specific written provisions from the Student Handbook and other unwritten rights guaranteed by law." (*See* Compl. at ¶¶ 77, 79.) These allegations are not sufficient to inform Ross University of what specific provisions Plaintiff alleges Ross University breached.

---

[2] Plaintiff fails to cite or attach the relevant contractual provisions, including any "choice of law" provisions governing the alleged contract. For the purpose of this Motion, Defendants cite to Tennessee law, without admitting or concluding that it is the governing law between the parties.

Moreover, a number of Plaintiff's allegations actually support that there are ***no relevant contractual provisions*** supporting Plaintiff's breach of contract claim. For example, Plaintiff admits that there "does not appear to be any language stating the decisions and actions by the Title IX Coordinator and hearing panel will be unbiased[.]" (Compl. at p. 11, ¶ 2.) Yet, Plaintiff still alleges a breach of contract claim based on Ross University's alleged failure to conduct an unbiased investigation. (*Id*. at p. 11, ¶ 3.) Similarly, Plaintiff claims that Ross University breached an alleged obligation to provide "competent, trained, unbiased investigators and decision makers," yet admits that Ross University's sexual misconduct policy is "devoid of an obligation that decision makers act without bias." (*Id.* at p. 12, ¶ C, 1.) Plaintiff also alleges breach of contract because he was not given the right to cross examine his accuser, but admits that Ross University's sexual misconduct policy does not provide a right to cross examination. (*Id*. at pp. 13-14, ¶ 1.)[3] Plaintiff cannot state a valid breach of contract claim when he admits that there are no written contractual provisions that Defendants purportedly breached.

Apparently recognizing that Ross University did not violate any actual written policies in the investigation or disciplinary hearing, Plaintiff alleges that Ross University's action nevertheless violated some vague "promise of fundamental fairness" or the implied covenant of good faith. (*E.g.*, Compl. at pp. 11-15.) These general allegations are insufficient to state a breach of contract claim. *See Belmont*, 2018 WL 4627033, at *4 (holding that, for a breach of contract claim, the court looks only to specific provisions in a school's written policies, and "does not look to ascribe responsibility for failing to live up to general 'aspirational statements'"); *see also Thomas*, 1 F. Supp. 3d at 829 (holding that "[b]reach of the implied

---

[3] Plaintiff cites to *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018), for the proposition that cross examination is required, but *Baum* made that determination under the Due Process Clause for a ***public*** university. *Baum* does not apply to a breach of contract claim against a private school, like Ross University. *See Belmont*, 2018 WL 4627033, at *7.

covenant of good faith and fair dealing is not an independent basis for relief" because the implied covenant does not exist without a valid contract) (internal quotations and citations omitted). Thus, Plaintiff fails to identify any specific contractual provision that Defendants allegedly breached.

### B. Plaintiff Fails To Allege Specific Facts Supporting That Ross University Breached Any Contractual Provisions.

Even if Plaintiff had identified an actual written contractual provision – which Plaintiff has not – the Court still should dismiss his breach of contract claim because Plaintiff fails to allege any specific, non-conclusory facts supporting that Ross University breached such provisions. Plaintiff raises six breach of contract theories. These six theories are almost exactly the same as theories raised by the plaintiff in *Doe v. Belmont*, which the U.S. District Court for the Middle District of Tennessee just dismissed in September 2018 for failure to state a claim. *See Belmont*, 2018 WL 4627033, at *4. This Court should dismiss Plaintiff's breach of contract claims for all of the reasons listed below, and for the reasons stated in *Belmont*.

First, Plaintiff alleges that Ross University breached an obligation to conduct an appropriate and unbiased investigation. (Compl. at pp. 11-12, ¶¶ 1-6.) "In the university setting, a disciplinary committee is entitled to a presumption of honesty and integrity, absent a showing of actual bias." *See Belmont*, 2018 WL 4627033, at *8 (quoting *Atria*, 142 Fed. App'x at 256); *see also McMillan v. Hunt*, No. 91-3843, 1992 WL 168827, at *2 (6th Cir. Jul. 21, 1992). To overcome that presumption, Plaintiff must plausibly allege "personal animosity, illegal prejudice, or a personal or financial stake in the outcome" on the part of Ross University officials. *Belmont*, 2018 WL 4327033, at *8 (quoting *Ikpeazu v. Univ. of Neb.*, 775 F.2d 250, 254 (8th Cir. 1985)). To survive a motion to dismiss, allegations of bias must be "evident from the record and not based on inference or speculation." *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586, 601

(S.D. Oh. 2016) (citing *Nash v. Auburn Univ.*, 812 F.2d 655, 665 (11th Cir. 1987)). A "mere belief that [school officials] acted with…ulterior motives" during the course of the investigation "is insufficient to state a claim for relief." *Id.* at 602; *see also Center for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 377 (6th Cir. 2011) (holding "vague and conclusory allegations of nefarious intent and motivation…are not well-pleaded, and are therefore insufficient to plausibly suggest an entitlement to relief") (internal quotations and citations omitted); *c.f. Gorman v. Univ. of Rhode Island*, 837 F.2d 7, 15 (1st Cir. 1988) ("Alleged prejudice of university hearing bodies must be based on more than mere speculation and tenuous inferences."). Here, Plaintiff does not allege ***any*** specific facts supporting that Ross University's investigation was inappropriate or biased. Rather, Plaintiff's only allegations are that (i) Plaintiff's right to a support advisor or attorney was not clearly made known to him; and (ii) the hearing panel disregarded his statement that he was ill and had not had time to prepare. (Compl. at pp. 12, ¶ 5.) These allegations have nothing to do with whether the investigation was appropriate or biased, and neither is sufficient to state a claim that Ross University's investigation was inappropriate or biased.

Second, Plaintiff alleges that Ross University breached its contract because he was denied meaningful right to counsel. (*Id.* at p. 12, ¶¶ 1-3.) Plaintiff admits, however, that Ross University's policy allowed him the ***opportunity*** to consult a support advisor, including an attorney. (*Id.* at p. 12, ¶¶ 5, 2.) Plaintiff does not allege that Ross University had an obligation to ***provide*** counsel for him. Plaintiff also does not allege that Ross University denied his request or attempt to use a support advisor and/or counsel. Thus, Plaintiff has not alleged facts supporting that Ross University breached its purported contractual obligation. *See Belmont*, 2018 WL 4627033, at *7 (dismissing breach of contract claim based on alleged right to counsel

where plaintiff was permitted to have an advisor and alleged no restrictions were placed on his obtaining an advisor).

Third, Plaintiff alleges that Ross University breached an obligation to provide competent, trained, and unbiased investigators and decision-makers. (Compl. at pp. 12-13, ¶¶ 1-5.) This claim is based primarily on a conclusory belief that the investigators did not have adequate training in adjudication, the law of sexual assault, and/or the weighing, significance, or relevance of certain types of evidence. (*Id.* at p. 13, ¶ 5.) Again, Plaintiff does not provide any support for this conclusion and does not include any specific allegations about the backgrounds or lack of training of any of the investigators or decision-makers.[4] *See Belmont*, 2018 WL 4627033, at *8 (dismissing a breach of contract claim challenging the competency and bias of investigators and appeals officers because it was based on the plaintiff's wholly speculative and conclusory "belief"). Rather, Plaintiff's alleged belief seems to be based entirely on the ***outcome*** of his disciplinary hearing, which is not a sufficient basis. *Id.* at *7 (stating that the plaintiff is just dissatisfied with the result of the investigation, which is an insufficient basis for his breach of contract claim).

Fourth, Plaintiff alleges that Ross University breached an obligation to afford Plaintiff an opportunity for confrontation and cross examination. (Compl. at pp. 13-14, ¶¶ 1-2.) As stated above, Plaintiff's citation to *Baum* is misplaced because *Baum* does not involve a contractual obligation and does not apply to private schools like Ross University. *See Belmont*, 2018 WL 4627033, at *8. Regardless, Plaintiff fails to allege any facts supporting that he requested to

---

[4] Plaintiff's remaining allegations in support of this claim involve Ross University's alleged treatment of ZH. But Ross University's investigation and punishment of ZH has nothing to do with whether the people investigating and disciplining Plaintiff's case were competent, trained, and unbiased. *See Belmont*, 2018 WL 4627033, at *9 (dismissing the plaintiff's breach of contract claim for failure to punish another student because the issue of whether the other student engaged in any misconduct is immaterial to whether the plaintiff engaged in misconduct).

cross-examine his accuser but was prevented. Thus, Plaintiff fails to allege sufficient facts to support that Ross University breached its obligation.

Fifth, Plaintiff alleges that Ross University breached an obligation that there be sufficient evidence to support the Title IX Coordinator's finding. (Compl. at p. 14, E, ¶¶ 1-2.) Again, Plaintiff relies solely on one speculative and conclusory allegation that the "records pertaining to Ross University's investigation and ultimate decision demonstrate that Ross University breached these obligations." (*Id.* at p. 14, ¶ 2.) Plaintiff does not allege any specific facts showing there was insufficient evidence to support the finding. Rather, Plaintiff's own allegations admit that he violated Ross University's "no-contact" order by texting ZH for sex. (*Id.* at ¶¶ 37-38.) This alone is a sufficient basis to support Ross University's finding. "'The law does not allow this Court to retry [Ross University's] disciplinary proceeding' [citation] and it is not for the Court to construe [Ross University's policies] as 'requiring a particular outcome.'" *See Belmont*, 2018 WL 4627033, at *10 (quoting *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 755 (E.D. Tenn. 2009) and *Anderson v. Vanderbilt Univ.*, 450 Fed. App'x 500, 502 (6th Cir. 2011).)

Sixth, Plaintiff alleges that Ross University breached an obligation to provide a meaningful right of appeal. (Compl. at pp. 14-15, F, ¶¶ 1-5.) This claim fails because Plaintiff admits that he was given an appeal. (*Id.* at ¶ 66, p. 15, ¶¶ 2-3.) Apparently recognizing that he was given an appeal, Plaintiff makes an unsubstantiated allegation that the appellate officers did not have training in adjudication, the law, or evaluating evidence. (*Id.* at p. 15, ¶ 3.) However, as stated above, this conclusory and baseless allegation is not sufficient to support Plaintiff's claim that he was denied a meaningful right to appeal. *See supra* at p. 9 (discussing Plaintiff's allegation that Ross University's investigators and decision-makers did not have training in adjudication, the law, or evaluating evidence); *see also Belmont*, 2018 WL 4627033, at *8.

### C. **Plaintiff Fails To Allege Any Damages.**

The Court also should dismiss Plaintiff's breach of contract claim because Plaintiff has not adequately pled any alleged damages. "Damages in breach of contract cases are nothing more than payment in money for actual losses caused by the breach of contract." *Belmont*, 2018 WL 4627033, at *11 (quoting *Custom Built Homes v. G.S. Hinsen Co.*, No. 01A01-9511-CV-00513, 1998 WL 960287, at *4 (Tenn. Ct. App. Feb. 6, 1998)). Here, Plaintiff fails to allege he had any actual monetary losses as a result of Ross University's alleged breaches of contract. Rather, Plaintiff only includes a general, boilerplate request for relief seeking an award of "compensatory damages in an amount to be determined at trial for mental anguish, severe emotional distress, injury to reputation, serious mental injury, past and future economic loss, deprivation of due process, loss of educational opportunities, [and] loss of future career prospects[.]" (Compl. at p. 21, ¶ 6.) This allegation is insufficient to support that Plaintiff had any actual damages and is an independent basis for dismissing Plaintiff's breach of contract claim. *See Belmont*, 2018 WL 4627033, at *11 (dismissing the plaintiff's breach of contract claims because the plaintiff failed to "allege that [he] lost any money or benefits" and instead included only "impermissibly speculative" boilerplate language seeking damages for loss of educational opportunities, past and future economic loss, and loss of future career prospects).

## II. **The Court Should Dismiss Plaintiff's Promissory Estoppel Claim.**

To state a claim for promissory estoppel, a plaintiff must allege facts showing that (1) a party made a promise that was reasonably expected to induce action or forbearance; (2) the action or forbearance was so induced; and (3) injustice can only be avoided by enforcing the promise. *Belmont*, 2018 WL 4627033, at *12 (citing *Sifuna*, 2018 WL 3005814, at *2 (further citations omitted)). Under Tennessee law, promissory estoppel claims are not liberally applied and require exceptional cases where there is nearly actual fraud. *See Barnes & Robinson Co.,*

*Inc. v. OneSource Facility Services, Inc.*, 195 S.W.3d 637, 645 (Tenn. Ct. App. 2006); *c.f. Shedd v. Gaylord Entm't Co.*, 118 S.W.3d 695, 700 (Tenn. Ct. App. 2003). Moreover, "as a general matter, the theory of recovery is not viable when a valid contract exists." *Belmont*, 2018 WL 4627033, at *12 (citing *Jones v. BAC Home Loans Serving, LP*, No. W2016-00717-COA-R3-CV, 2017 WL 2972218, at *9 (Tenn. Ct. App. July 12, 2017)).

Here, Plaintiff's promissory estoppel claim is based on the exact same allegations as his breach of contract claims. (Compl. at p. 15, ¶ 1.) Plaintiff alleges that (i) the "Sexual Assault Policies, Student Handbook, and other official University publications constitute representations and promises;" and (ii) Ross University intended to induce reliance, action, or forbearance by Plaintiff based on these documents. (*Id.* at p. 15, ¶ 1.) These allegations are entirely duplicative of Plaintiff's breach of contract claim, which also are purportedly based on the Sexual Misconduct Policy, Student Handbook, and other official University publications. (*Id.* at p. 11, ¶ 77.) Thus, Plaintiff's promissory estoppel claim fails as a matter of law and should be dismissed. *Belmont*, 2018 WL 4627033, at *13 (dismissing the plaintiff's promissory estoppel claim to the extent it was duplicative of his breach of contract claim).

## III.    The Court Should Dismiss Plaintiff's Title IX Claims.

Plaintiff advances seven theories of liability under Title IX: (i) erroneous outcome; (ii) selective enforcement; (iii) deliberate indifference; (iv) archaic assumptions; (v) hostile environment; (vi) equal protection; and (vii) substantive due process. As set forth below, none of the claims can survive a Motion to Dismiss because they either are not legally available, or because Plaintiff has not pled facts sufficient to support the claims.

### A. Plaintiff Has Not Pled Facts Sufficient To Support The "Erroneous Outcome" Theory.

To succeed under an "erroneous outcome" theory, Plaintiff must demonstrate that Ross University's conduct was motivated by sexual bias. *See Univ. of the South*, 687 F. Supp. 2d at 756 (citing *Mallory v. Ohio Univ.*, 76 Fed. App'x 634, 638 (6th Cir. 2003)). Specifically, Plaintiff must plead facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding and a particularized causal connection between the flawed outcome and gender bias. *Cummins*, 662 Fed. App'x at 451-52. Plaintiff fails to meet both requirements.

First, Plaintiff fails to make any specific allegations casting articulable doubt on the accuracy of the disciplinary proceeding. For example, Plaintiff alleges that "no exculpatory evidence or evidence favorable to him was considered" (Compl. at p. 17, ¶ 1), but he does not identify any evidence that Ross University purportedly failed to consider. Thus, this assertion is only a conclusory statement of belief, and not sufficient to cast doubt on the accuracy of the disciplinary proceeding.

Second, Plaintiff alleges that unspecified public records and patterns of unidentified decision-makers tend to show the influence of gender (Compl. at p. 17, ¶ 2), but he fails to provide any details supporting this allegation. Similarly, Plaintiff provides no information supporting his conclusory "belief" that Student Affairs found ZH more credible because she is a female.[5] (Compl. at pp. 17-18, ¶¶ 4, 6.) Because Plaintiff has not alleged any facts supporting his claim that Ross University reached an erroneous outcome because he is a man, he has failed to plead a colorable claim of erroneous outcome under Title IX.

---

[5] Plaintiff's allegation that Ross University did not discipline ZH is insufficient to support a particularized causal connection between the outcome and gender bias. Indeed, whether ZH engaged in misconduct is immaterial to whether Plaintiff engaged in misconduct. *See Belmont*, 2018 WL 4627033, at *9.

**B.    Plaintiff Has Not Pled Facts Sufficient To
Support The "Selective Enforcement" Theory.**

To succeed under the "selective enforcement" theory, Plaintiff must demonstrate that the conduct of the university was motivated by sexual bias. *See Univ. of the South*, 687 F. Supp. 2d at 756 (citing *Mallory*, 76 Fed. App'x at 638). He must specifically demonstrate that a female was in circumstances sufficiently similar to his and was treated more favorably by the school. *Id.*

Plaintiff alleges that, upon information and belief, a public records response "would show a vast difference in the number of males found guilty of sexual assault vs. the number of females." (Compl. at p. 18, B, ¶ 1.) This admittedly speculative allegation is insufficient to support his "selective enforcement" theory. Indeed, Plaintiff fails to allege any facts supporting this conclusion. But even if he had included facts supporting the conclusion, the mere fact that more men may have been found guilty of sexual assault does not mean there is gender bias. Rather, it simply may be because more men actually committed sexual assault.

Plaintiff's only other allegation, that there would be "a question of the number of females found to be lying in their accusations," also does not support a claim that females in his situation would be treated differently. (Compl. at p. 18, B, ¶ 1.) Whether or not female accusers are truthful in their allegations has no effect on whether Ross University would treat a woman in a similar situation more favorably.

Plaintiff fails to include any allegation that a woman in his same situation – allegedly blackmailing someone for sex – would be treated differently. Thus, Plaintiff has failed to state a valid Title IX claim for "selective enforcement." *See Univ. of the South*, 687 F. Supp. 2d at 757 (dismissing selective enforcement claim because the plaintiff "failed to plead facts or provide…any evidence that [the university's] actions against [him] were motivated by his gender

and that a similarly situated woman would not have been subjected to the same disciplinary proceedings.").

### C. Plaintiff Has Not Pled Facts Sufficient To Support The "Deliberate Indifference" Theory.

To state a claim for "deliberate indifference," Plaintiff must allege (1) sexual harassment that is so severe, pervasive, and objectively unreasonable that it could be said to deprive him of access to educational opportunities or benefits provided by the school; (2) Ross University had actual knowledge of the sexual harassment; and (3) Ross University was deliberately indifferent to the harassment. *Doe v. Miami Univ.*, 882 F.3d 579, 590-91 (6th Cir. 2018); *Univ. of the South*, 687 F. Supp. 2d at 756. Critically, school liability for sexual harassment only extends to harassment that occurs when the school has the authority to correct or prevent the behavior. *Miami Univ.*, 882 F.3d at 590 ("Under the deliberate-indifference theory, a plaintiff must 'demonstrate that an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct.'") (quoting *Mallory*, 76 Fed. App'x. at 638). In support of his "deliberate indifference" claim, Plaintiff alleges that Ross University had notice, but failed to take action with respect to ZH's alleged harassment, and that ZH's alleged conduct barred Plaintiff's access to education and benefits. (Compl. at pp. 18-19, D, ¶¶ 1-3.)

First, Plaintiff's allegation that Ross University failed to take action in response to his complaints about ZH's alleged harassment is directly contradicted by Plaintiff's own allegations. Specifically, Plaintiff admits that Ross University (i) instituted a "no-contact" order in response to Plaintiff's complaints (Compl. at ¶ 25), (ii) agreed to look into other complaints by Plaintiff (*id*. at ¶ 27), and (iii) sent out "charges" after the car chasing incident (*id*. at ¶ 52). Thus,

Plaintiff's own allegations provide no reasonable basis for his claim that Ross University failed to take action in response to his complaints. *See Univ. of the South*, 687 F. Supp. 2d at 757.

Plaintiff also fails to allege facts supporting that the alleged harassment occurred in a place over which Ross University ***had authority***. Rather, he admits that the alleged actions occurred at his apartment (*e.g.*, Compl. at ¶¶ 16-19; 21-22), and that he drove to campus security after one incident (*id.* at ¶ 22). Once on campus, Plaintiff admits that campus security handled the issue and stopped any alleged harassment. (*Id.* at ¶¶ 22, 24-25.) Further, Plaintiff admits ZH is no longer a student at Ross University and that she continued to go to his apartment after she withdrew from the school. (*Id.* at ¶ 53.) Plaintiff does not allege any facts demonstrating how Ross University could have exercised authority over ZH at his apartment or after she was no longer a student at the school. Thus, these allegations fail to establish that any alleged harassment occurred in a place where Ross University had authority.

Moreover, Plaintiff fails to plead facts supporting that the alleged harassment was so pervasive that it deprived him of access to educational opportunities or benefits provided by Ross University. In fact, Plaintiff's Complaint alleges the opposite. Plaintiff alleges that, despite the alleged harassment, Plaintiff passed exams and his semester. (Compl. at ¶¶ 58, 69.) To the extent that Plaintiff alleges any deprivation of access to educational opportunities or benefits resulting from Plaintiff's suspension, this result was caused by Plaintiff's ***own conduct***, not the alleged harassment by ZH. Thus, it cannot form the basis for his deliberate indifference theory. *See Baum*, 903 F.3d at 588 (holding that the alleged misconduct for deliberate indifference claim must be sexual harassment and not a biased disciplinary proceeding).

### D. Plaintiff's "Archaic Assumptions" Theory Fails As A Matter Of Law Because It Only Applies In The Student-Athlete Context.

Under the "archaic assumption" theory, a school may be liable when it denies a student "an equal opportunity to participate in an athletic program because of historical assumptions about boys' and girls' physical capabilities." *Baum*, 903 F.3d at 587-88 (citing *Mallory*, 76 Fed. App'x at 638-39). The Sixth Circuit recently confirmed that this theory is limited to cases involving student athletic programs by stating "[t]his court has never applied the [archaic assumptions] theory outside of the athletic context, and, indeed, we have repeatedly refused litigants' requests to do so." *Id.* at 588. Because Plaintiff's claims do not arise in the athletic context, his claim under the archaic assumption theory must be dismissed.

### E. Plaintiff Has Not Pled Facts Sufficient To Support The "Hostile Environment" Theory.

Under the "hostile environment" theory, the plaintiff must allege that his educational experience was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive [so as] to alter the conditions of the victim's educational environment." *Miami Univ.*, 882 F.3d at 590 (internal quotations omitted, alteration in original) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). To support this claim, Plaintiff relies on one threadbare allegation reciting its elements. (Compl. at p. 19, E, ¶ 1.) Plaintiff fails to allege any specific facts supporting such "discriminatory intimidation, ridicule, and insult" or that such actions altered the conditions of Plaintiff's educational environment.

Indeed, Plaintiff's other allegations suggest the opposite; namely, that his educational environment was not negative or discriminatory. Plaintiff admits that he passed his exams and his semester. (Compl. at ¶¶ 58, 69.) And none of Plaintiff's allegations suggest or show any alleged discriminatory actions taking place in his classes or while at school. Rather, they all

allegedly occurred at his apartment.  (*Id.* at ¶¶ 16-19, 22, 26, 28-29, 32, 46, 49, 51-54.)  This was his home and not part of his educational environment.  Thus, Plaintiff fails to allege sufficient facts to support the "hostile environment" claim.

> **F.      Plaintiff's "Equal Protection" And "Due Process" Claims Fail As A Matter Of Law Because Ross University Is Not A State or State Actor.**

Plaintiff's equal protection and due process claims fail because, by Plaintiff's own allegations, Ross University is a "***private*** international medical school."  (Compl. at ¶ 5 (emphasis added).)  As such, Ross University is not a state actor and cannot be liable for any alleged due process violations.  *Faparusi*, 711 Fed. App'x at 275 (holding that due process claims are only cognizable against state actors).

Plaintiff attempts to allege that Ross University is a state actor because it accepts federal funding.  (Compl. at p. 18, C, ¶ 2.)  But, "[f]ederal regulation and receipt of federal funds alone, does not convert private conduct to government or state action."  *Faparusi*, 711 Fed. App'x at 276 (citations omitted); *see also Rendell-Baker v. Kohn*, 457 U.S. 830, 840, 102 S. Ct. 2764, 2771, 73 L. Ed. 2d 418 (1982) (finding that a private school was not a state actor for purposes of discharge claims and holding that the private school's "receipt of public funds does not make [its] decisions acts of the State").  Thus, Plaintiff's allegation that Ross University receives federal funding "does not by itself transform a private institution into a state actor."  *Heineke v. Santa Clara Univ.*, No. 17-CV-05285-LHK, 2017 WL 6026248, at *15 (N.D. Cal. Dec. 5, 2017).

## IV.      Plaintiff Has Not Stated A Valid Claim Against Adtalem.

Finally, Plaintiff fails to allege any actions by Adtalem.  Where a plaintiff has "not alleged any facts to support any claims against [the parent corporation]…other than the factual allegation that it is the parent" the plaintiff has not alleged facts sufficient to give rise to direct claims against the parent.  *Jenkins v. Marvel*, 683 F. Supp. 2d 626, 631 (E.D. Tenn. 2010).  Here,

Plaintiff includes Ross University's parent, Adtalem, as a Defendant, but fails to allege any facts supporting any claim against it. In fact, Adtalem is only referenced in one paragraph of the Complaint; namely, in the paragraph describing the parties. (*See* Compl. at ¶ 5 ("Ross University Medical School is a private international medical school that is a member of Adtalem Global Education[,]" and "Adtalem is the parent company to Ross and several other educational institutions.").) Plaintiff does not allege any facts suggesting that Adtalem would be liable for Ross University's alleged actions and no allegations supporting that the Court should pierce the corporate veil. Indeed, Plaintiff does not even request damages against Adtalem. (Compl. at p. 21, ¶¶ 1-7.) Thus, in addition to all of the reasons stated above, the Court should dismiss Adtalem as a Defendant.

<u>**CONCLUSION**</u>

WHEREFORE, Defendants ask this Court to grant their Motion to Dismiss in its entirety and dismiss all claims against them with prejudice, and for any such further relief to which they show themselves entitled at law or in equity.

Dated: November 29, 2018

Respectfully submitted,

*/s/ Bryan M. Westhoff*

Bryan M. Westhoff (*pro hac vice*)
bwesthoff@polsinelli.com
Polsinelli PC
150 N. Riverside Plaza, Suite 3000
Chicago, Illinois 60606

Caitlin J. Morgan (*pro hac vice*)
cmorgan@polsinelli.com
Polsinelli PC
2950 N. Harwood, Suite 2100
Dallas, Texas 75201

Michael A. Malone (BPR # 31219)
mmalone@polsinelli.com
Polsinelli PC
401 Commerce Street, Suite 900
Nashville, TN 37219
Telephone: (615) 259-1510

**Counsel for Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that I today caused a copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system which will be sent to all attorneys of record, namely:

Michelle Owens
Agee Owens & Cooper Law
2911 Elm Hill Pike, Suite 2
Nashville, TN 37214
mowens@ageeowenslaw.com
*Attorney for Plaintiff*

Dated this 29th day of November, 2018

/s/ Bryan M. Westhoff

Bryan M. Westhoff (*pro hac vice*)
bwesthoff@polsinelli.com
Polsinelli PC
150 N. Riverside Plaza, Suite 3000
Chicago, Illinois 60606

**Counsel for Defendants**